## �export Richmond.

### INTERSTATE COAL & IRON CO. V. COMMONWEALTH.

March 9, 1905.

Absent, Cardwell, J.

1. TAXATION—*Assessment of Mineral Lands—Quantity "Improved and Under Development"—How Valued.*—In ascertaining the quantity of mineral lands "improved and under development," under the act requiring commissioners of the revenue to make a separate and special assessment of taxes on mineral lands, the entire body of land underlaid with coal, upon which mines have been opened and are being operated, should be assessed as "improved and under development," and not merely so much of the land as will be deprived of its coal before the next assessment; and, in the absence of any evidence of a fairer or better method of ascertaining the extent of the improvement, it is not error to take as an index the number of coke ovens in operation on the land. At the next assessment, the lands which have been deprived of their coal should be deducted from the quantity previously assessed.

Error to a judgment of the Circuit Court of Wise county, rendered on a motion by the plaintiff in error to correct an alleged erroneous assessment.

*Affirmed.*

The opinion states the case.

*Bullitt & Kelley,* for the plaintiff in error.

*Attorney-General William A. Anderson* and *W. W. G. Dotson,* for the Commonwealth.

KEITH, P., delivered the opinion of the court.

The Interstate Coal & Iron Company is the owner of a tract of coal lying in Wise county, containing 1470 acres. In the year 1903, the commissioner of the revenue assessed one-half of this land, 735 acres, as being under development, at the sum of $200 per acre, a total valuation of $147,000 and the remainder at $20 per acre, amounting to $14,714.80.

On the 9th of December, 1903, the Coal & Iron Company having given the Commonwealth's Attorney of Wise county proper notice, made motion before the Circuit Court to correct this assessment, and to assess only 65 acres thereof as under improvement.

The case came on to be heard, and it appeared from the evidence that only 421 acres of the tract was underlaid with coal, and that only about 65 acres thereof will be mined within the next two years; that $200 per acre is a fair valuation of that portion of the land which should be considered as under improvement; that the coal company has upon the land 200 coke ovens, which together with the buildings, machinery and other structures, are assessed to the Virginia Iron, Coal & Coke Company, the lessee of the Interstate Coal & Iron Company; that the coal vein upon the land will produce about 8,000 tons of coal per acre, and that the Interstate Coal & Iron Company receives, as royalty upon the coal, ten cents per ton, making about $800 per acre which it will receive for every acre of coal which shall be mined; that about one-third of the coal mined from said property is shipped as coal, and that the residue is made into coke; and that various other companies, which make about the same proportion of coke and coal, have been assessed

in Wise county as having about two acres of land under improvement for each coke oven owned by such company. And thereupon, "the court being of opinion that in order to determine how much land is under improvement, it is right to consider the number of coke ovens being operated on the property, and the output of coal therefrom, and that to consider two acres as under improvement for each coke oven, where two-thirds of the coal is made into coke, is a fair way to estimate the quantity of land under improvement, and, being further of opinion that all such companies ought to be taxed ratably, upon the basis of the number of coke ovens operated by each, and the output made by them, respectively, it is therefore considered by the court, that 421 acres of the said land, this being all thereof which carries the coal, should be considered as under improvement; and it is further considered by the court that the said assessment be corrected, and that 421 acres of the said land be assessed at $200 per acre, and that the residue of the land to-wit: 1049.74 acres, be assessed at $20 per acre, and that the taxes be extended upon this corrected assessment."

Thereupon the Interstate Coal & Iron Company appealed to this court, and assigns as error the ruling of the court, that 421 acres of its land should be considered as under improvement, instead of holding that only 65 acres should be considered as under improvement, and be assessed at $200 per acre.

The assessment was made under an act entitled, "An Act to provide for the separate and special assessment of taxes on mineral lands, and on the improvements, fixtures, and machinery thereon," approved May 13, 1903, which is as follows:

"1. Be it enacted by the General Assembly of Virginia, as follows: The several commissioners of the revenue in this State shall, on or before the first day of August, nineteen hundred and three, and every second year thereafter, on or before

the fifteenth day of May, specially and separately, assess at the fair cash value all mineral lands, and the improvements, fixtures, and machinery thereon, within their respective districts separately from other lands charged thereon, and shall extend the taxes upon said lands, improvements, fixtures and machinery, assessed as aforesaid, at the rate fixed by law upon tangible property.

"2. The commissioner, in assessing mineral lands, shall set forth upon the land book, first, the area and the fair cash value thereof, first of such portion of each tract which is improved and under development; second, the fair cash value of the improvements, fixtures, and machinery upon each tract; and, third, the area, and the fair cash value, of such portion of each tract as shall not be under development. If the surface of the land is held by one person, and the coal, iron, minerals, mineral water, gas or oils under the surface be held by another person, the estate therein of each, and the relative fair cash value of their respective interests shall be ascertained by the commissioner. If the surface of the land and the coal, iron, minerals, mineral waters, gas or oils under the surface be owned by the same person, the commissioner shall ascertain the fair cash value of the land, inclusive of the coal, iron, minerals, mineral waters, gas or oils, and assess the same at such ascertained value."

It appears from the act that the commissioners of revenue are required, on the first day of August, 1903, and every second year thereafter on or before the 15th day of May, to assess all mineral lands at their fair cash value; first, of such portion of each tract which is "improved and under development"; and secondly, of the improvements, fixtures, and machinery upon each tract; and, third, the area, and fair cash value of such portion of each tract as shall not be under development.

What is the meaning of the words, "improved and under

development," as used in the statute? It is evidently something different from "improvements, fixtures, and machinery." According to the appellant, only so much of the land as will be deprived of its coal within the next two years after the assessment can be considered as under improvement; while the court was of opinion that by opening the mines upon the lands, the cash value of the entire body of land underlaid with coal was enhanced, and took as an index by which the extent of the improvement was to be measured the number of coke ovens in operation. At the end of two years, if the coal under 65 acres shall have been exhausted, that area ought to be deducted from the aggregate of the mineral lands under improvement; the result of which will be that the owners of mineral lands will pay taxes upon the fair cash value of the land, inclusive of the coal, iron, and minerals, as the statute directs, and will, at the end of each period of two years, be relieved from taxation upon that land from which the coal has been taken.

The statute fixes no other standard than that the commissioner shall ascertain its fair cash value, and there is no evidence to show that the mode adopted by the commissioner and by the court is not in itself proper, or which suggests to this court a more fair and just method of reaching the object at which the statute aims.

The judgment of the Circuit Court is affirmed.

*Affirmed.*